[Cite as *Wos v. Cleveland*, 2025-Ohio-1456.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

EKATARINA WOS, ET AL.,                    :

    Plaintiffs-Appellants,          :

                                       No. 114279

    v.                              :

CITY OF CLEVELAND, ET AL.,                :

    Defendants-Appellees.           :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:**  REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:**  April 24, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-993917

---

### *Appearances:*

Wegman Hessler and Jay R. Carson; The Buckeye
Institute and David Tryon, *for appellants.*

The Menashe Law Group LLC, Diane M. Menashe, and
James N. Pfeiffer, *for appellees.*

DEENA R. CALABRESE, J.:

{¶ 1} Plaintiffs-appellants Ekaterina Wos[1] and David Steffes (collectively the "Taxpayers") appeal the trial court's decision granting the Civ.R. 12(B)(6) motion to

---

[1] Although Wos's first name is spelled Ekat*a*rina with an "a" in the case caption, the complaint and the appellate briefs spell her name as Ekat*e*rina with an "e."

dismiss of defendants-appellees, the City of Cleveland and its finance director, Ahmed Abonamah (collectively the "City"). In a journal entry dated July 26, 2024, the trial court dismissed the Taxpayers' complaint in its entirety, concluding that they had impermissibly failed to exhaust their administrative remedies prior to seeking judicial relief. This timely appeal followed. Upon review of the record and pertinent law, we reverse the trial court's decision and remand the case for further proceedings consistent with this opinion.

## I. Procedural History

{¶ 2} The Taxpayers commenced the underlying action on March 6, 2024. Their complaint sought declaratory relief and a writ of mandamus, principally in connection with interest allegedly due on tax refunds issued by the City. Count 1 of the complaint sought a declaratory judgment "that pursuant to Cleveland Cod. Ord. §§ 192.28 (d) [and] 192.[29] (a)(4)," the Taxpayers were entitled to interest on 2021 municipal income tax refunds and that the City improperly "declined to pay interest." Cleveland Cod.Ord. 192.28(d) provides, in pertinent part:

> Interest shall be allowed and paid on any overpayment by a taxpayer of any municipal income tax obligation from the date of the overpayment until the date of the refund of the overpayment, except that if any overpayment is refunded within ninety (90) days after the final filing date of the annual return or ninety (90) days after the completed return is filed, whichever is later, no interest shall be allowed on the refund.

The Taxpayers contend that following the submission of their completed tax returns, the City failed to issue refunds within 90 days, and that it therefore owes interest, under the terms of the statute, "from the date of the overpayment until the date of

the refund of the overpayment." *Id.* To that end, paragraph 63 of the complaint alleges that the Taxpayers "have made timely requests to the City to pay the required interest on their refund, but the City has refused to do so." The Taxpayers requested that the trial court "declare that they are entitled to interest on their respective municipal income tax refunds." (Complaint at ¶ 64.)

{¶ 3} Count 1 of the complaint also alleges improper withholding "for income earned that was done outside of the City, to wit, vacation pay, and over which the City has no taxing jurisdiction as well as income earned outside of the City for which the City eventually provided refunds." (Complaint at ¶ 61.)

{¶ 4} Count 2 of the complaint sought a writ of mandamus to the City's finance director, pursuant to R.C. 2731.02 et seq., "ordering the City to make the required interest payment." (Complaint at ¶ 72.) Despite limiting this concluding reference to "the required interest payment," Count 2 also contains an allegation that the Taxpayers were "improperly taxed on vacation days." (Complaint at ¶ 70.)

{¶ 5} In addition to seeking relief on their own behalf, the Taxpayers brought their action on behalf of a purported class consisting of "[a]ll nonresident taxpayers, as defined in Cod. Ord. § 191.0301, who sought refunds of amounts withheld for municipal income tax who received a tax refund more than 90 days after filing his or her return," excluding any judge or magistrate presiding over the case (as well as their families) and anyone requesting exclusion from the class.

{¶ 6} The complaint's prayer for relief explicitly requested the following:

(1) As to Count One, a declaration stating that representative Plaintiffs and the similarly situated Class members, are entitled to the payment of interest on their municipal income tax refunds;

(2) As to Count Two, a writ of mandamus ordering . . . Abonamah and the City to make the required interest payment to Ms. Wos, Mr. Steffes, and the Class members[.[2]]

{¶ 7} The City filed its motion to dismiss on May 15, 2024. The motion, expressly premised on Civ.R. 12(B)(6), argued that the complaint failed to state a claim for relief because the Taxpayers had not exhausted their administrative remedies before turning to seeking court relief. Among the multiple arguments made by the City, the following excerpt stands out:

Most significant, though, are the allegations missing from the Complaint. For one, *Plaintiffs never allege that they exhausted their administrative remedies by requesting that the City pay interest on their refunds for payments made beyond ninety days after they filed their respective returns.* Without that, it's *unclear to what extent — if at all — Plaintiffs' entitlement to interest was considered by the tax administrator* and incorporated into a "final ruling" on Plaintiffs' refund requests.

(Emphasis added.)

{¶ 8} The Taxpayers requested and received an extension of time to oppose the motion, ultimately filing their brief in opposition on June 13, 2024. Citing R.C. 718.11(C), the Taxpayers argued there was no administrative remedy to exhaust because "the board of tax review lacks jurisdiction other than to hear matters concerning *assessments*," that no assessments as defined in R.C. 718.01(PP)(1) or

---

[2] The prayer for relief also demanded costs and fees (including attorneys' fees), any other relief the trial court deemed equitable, and an expedited briefing and hearing schedule. None of these demands are pertinent to our review.

(2) had been issued, and therefore that the board of tax review "cannot afford relief to Plaintiffs in this case." (Emphasis added.) They noted not only that no assessments had been issued, but that the City had acknowledged that the Taxpayers had overpaid and were entitled to the refunds in the amounts the Taxpayers claimed. As they elaborated:

> Setting aside the taxation of their paid leave days, the Plaintiffs do not disagree with the City as to the amount of their refunds. They are simply insisting that the City pay them (and other taxpayers) the interest due on those refunds. They are seeking to compel the City to engage in the purely ministerial act of calculating and paying interest according to the ordinance's mandatory language.

(Taxpayers' opposition brief at p. 4.)

{¶ 9} In addition, the Taxpayers contended that they were challenging "not only the City's failure to pay interest as required by Cleveland Cod. Ord. 192.28(d) and 192.29(a)(4), but the City's unconstitutional practice of taxing vacation pay and other leave of non-resident employees who are working remotely by treating their vacation days as days worked in the City." The Taxpayers expressly stated: "This is a challenge to the constitutionality of that practice."[3]

{¶ 10} On June 19, 2024, the City filed its reply brief. Notably, the reply brief referenced the affidavit of William E. Gareau, Jr., who identified himself as the "Assistant Director of Law for the City of Cleveland's Central Collection Agency." The affidavit purports to counter the Taxpayers' claim that the City was tardy in

---

[3] As noted above, the complaint generally avers that the Taxpayers were "improperly taxed on vacation days." It does not, however, request a declaration that a particular legislative enactment or regulation is unconstitutional.

issuing refunds, an issue not before us at this juncture given the disposition below. Pertinent to this appeal, however, Gareau stated:

> Had Plaintiffs requested interest from the tax administrator, they would have been issued either an assessment or a letter denying their request and informing them how to request an assessment for purposes of appealing that denial to the local board of tax review.

(Gareau affidavit at ¶ 12.) The City incorporated this language, almost verbatim, into its reply brief. In connection with this averment, the City cited R.C. 718.11(B), which provides:

> Whenever a tax administrator issues an assessment regarding an underpayment of municipal income tax *or denies a refund claim*, the tax administrator shall notify the taxpayer in writing at the same time of the taxpayer's right to appeal the assessment *or denial*, the manner in which the taxpayer may appeal the assessment *or denial*, and the address to which the appeal should be directed.

(Emphasis added.) *Id.* According to the City, the denial of a request for interest on a tax refund should be treated the same as a claim for the denial of a refund.

{¶ 11} Due to the inclusion of the Gareau affidavit, the City's motion to dismiss for failure to state a claim, as fully briefed, "present[ed] matters outside the pleading." Civ.R. 12(B). Despite this, the trial court neither (a) expressly excluded Gareau's affidavit nor (b) converted the Civ.R. 12(B)(6) motion to a motion for summary judgment, which would have required the trial court to give the parties "reasonable opportunity to present all materials made pertinent to such a motion by Rule 56."

{¶ 12} The trial court granted the City's motion to dismiss by entry dated July 26, 2024. It concluded that the Taxpayers had failed to exhaust their

administrative remedies. The trial court held that "R.C. 718.11(C) states that any person who has been issued a final assessment from a tax administrator may appeal the assessment to the local board of tax review by making a request in writing, specifying the reasons why the assessment was incorrect or unlawful." After discussing general principles concerning the requirement to exhaust administrative remedies before seeking court review, the trial court wrote that "plaintiffs have an administrative remedy in seeking both a refund and interest on any refund" and also that "the question of how sick and vacation days should be assessed should first be considered through the administrative process." The trial court concluded that "the administrative process is not overly onerous, unusually expensive, or wholly futile." This timely appeal followed.

## II. Analysis

{¶ 13} The Taxpayers raise a single assignment of error:

> The trial court erred in dismissing the Complaint based on failure to exhaust administrative remedies.

Finding merit to the appeal, we reverse the trial court and remand this case for further proceedings consistent with this opinion.

{¶ 14} "It is a 'long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *State ex rel. Teamsters Local Union No. 436 v. Bd. of Cty. Commrs.*, 2012-Ohio-1861, ¶ 19, quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938); *see also Hall v. Rocky River*, 2019-

Ohio-1997, ¶ 16 (8th Dist.); *Loper v. Help Me Grow of Cuyahoga Cty.*, 2018-Ohio-2401, ¶ 27 (8th Dist.); *Schneider v. Cuyahoga Cty. Bd. of Cty. Commrs.*, 2017-Ohio-1278, ¶ 20 (8th Dist.).  As the Ohio Supreme Court elaborated in *Teamsters*:

> Thus, a "party must exhaust the available avenues of administrative relief through administrative appeal" before seeking separate judicial intervention.  *Noernberg v. Brook Park*, 63 Ohio St.2d 26, 29, 406 N.E.2d 1095 (1980).  "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review."  *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).  Where a party fails to exhaust available administrative remedies, allowing declaratory relief would serve "only to circumvent an adverse decision of an administrative agency and to bypass the legislative scheme."  *Fairview Gen. Hosp. v. Fletcher*, 63 Ohio St.3d 146, 152, 586 N.E.2d 80 (1992).

*Teamsters* at ¶ 19; *see also Noernberg* at 29 ("It is a well-established principle of Ohio law that, prior to seeking court action in an administrative matter, the party must exhaust the available avenues of administrative relief through administrative appeal.").

{¶ 15} The Ohio Supreme Court explained that the purpose of the exhaustion requirement "is to permit an administrative agency to apply its special expertise . . . and in developing a factual record without premature judicial intervention" and to "prepare the way, if the litigation should take its ultimate course, for a more informed and precise determination by the Court."  (Cleaned up.)  *Nemazee v. Mt. Sinai Med. Ctr.*, 56 Ohio St.3d 109, 111-112 (1990).  *See also Teamsters* at ¶ 22.

{¶ 16} Moreover, we have previously held that administrative remedies must be exhausted where a plaintiff claimed a mistake in the amount of a tax collected. *BP Communications, Alaska v. Cent. Collection Agency,* 136 Ohio App.3d 807 (8th Dist. 2000). The *BP* Court recognized that a board of tax review "has special expertise in tax matters and would be able to compile an adequate record, thus preparing 'the way, if the litigation should take its ultimate course, for a more informed and precise determination by the Court . . . .'" *Id.* at 815, quoting *Nemazee* at 112.

{¶ 17} As the trial court noted, there are exceptions to the exhaustion requirement. First, litigants "need not pursue their administrative remedies if doing so would be futile or a vain act." *Teamsters*, 2012-Ohio-1861, at ¶ 24, citing *Driscoll v. Austintown Assocs.*, 42 Ohio St.2d 263, 275 (1975). A vain act "occurs when an administrative body lacks the authority to grant the relief sought; a vain act does not entail the petitioner's probability of receiving the remedy." *Teamsters* at ¶ 24. As a result, "[t]he focus is on the *power* of the administrative body to afford the requested relief, and not on the happenstance of the relief being granted." (Emphasis in original.) *Id.*, quoting *Nemazee* at 115. Second, litigants need not exhaust administrative remedies "'when the available remedy is onerous or unusually expensive.'" *BP Communications* at 813, quoting *Karches v. Cincinnati*, 38 Ohio St.3d 12, 17 (1988).

{¶ 18} The Taxpayers maintain their tax returns were complete upon filing and that they did not receive their refunds within 90 days, entitling them to interest.

The City argues that it was not required to pay interest because the refunds were issued within 90 days of the receipt of complete filings. According to the City, the completed filing dates were different than the original filing dates because the City had to request additional documentation from the Taxpayers. Requiring the Taxpayers to exhaust their administrative remedies furthers the core purpose of the doctrine of exhaustion, which is to allow an agency the chance to apply its experience and knowledge before any claim is brought to court. Given their frequent handling of tax returns and claims, a board of tax review would be able to use its special expertise to resolve the question of when the Taxpayers' filings were "complete" in order to assess whether the Taxpayers are owed interest on their refunds. Although one of the exceptions to exhaustion may apply in specific circumstances, a board of tax review is generally best situated to address a dispute over whether interest is due on a tax refund.

{¶ 19} The trial court decided this case on the City's Civ.R. 12(B)(6) motion to dismiss. "We review rulings on Civ.R. 12(B)(6) motions to dismiss under a de novo standard." *Bedford City Schools Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 2024-Ohio-1894, ¶ 28 (8th Dist.). "'Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party.'" *Id.*, quoting *NorthPoint Properties v. Petticord*, 2008-Ohio-5996, ¶ 11 (8th Dist.). *See also Schneider v. Cuyahoga Cty. Bd. of Cty. Commrs.*, 2013-Ohio-1900, ¶ 2 (8th Dist.), citing *Fahnbulleh v. Strahan*, 73 Ohio St.3d 666, 667 (1995).

{¶ 20} Here, the City attached the affidavit of Gareau, in support of its Civ.R. 12(B)(6) motion to dismiss. Pursuant to Civ.R. 12(B), "[w]hen a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56." *Gerace v. Biotheranostics, Inc.*, 2022-Ohio-302, ¶ 23 (8th Dist.). As noted above, Civ.R. 12(B) also requires that the court, upon conversion of a motion to dismiss to a motion for summary judgment, give the parties "reasonable opportunity to present all materials made pertinent to such a motion by Rule 56."

{¶ 21} Generally speaking, "[a] trial court's failure to exclude evidence outside of the complaint or provide notice of conversion constitutes reversible error." *Rankin v. Rosolowski*, 2016-Ohio-7490, ¶ 8 (8th Dist.); *see also Gallagher v. Stonegate Mtge. Corp.*, 2013-Ohio-5747, ¶ 15 (8th Dist.). This is not always the case, however. We have held that the trial court is not required to convert a motion to dismiss into one for summary judgment, or give notice of conversion, if it can properly grant the motion without considering matters outside the complaint. In *Rankin*, for example, we affirmed the grant of a motion to dismiss despite the failure to exclude matters outside the complaint because "the trial court did not need to consider matters outside the complaint in order to conclusively determine that Rankin's claims were barred by the applicable statute of limitations." *Rankin* at ¶ 9. Likewise, in *Gerace*, we noted that we were not required to decide whether certain exhibits "were properly or improperly attached to the motion to dismiss" because

there was "no evidence in the record that the trial court relied on these attachments in rendering its decision," and "a ruling on the motion to dismiss could be, and was, properly rendered by viewing the complaint alone." *Gerace* at ¶ 25-29.

{¶ 22} Here, the trial court neither expressly excluded the affidavit nor gave notice to the parties that it was converting the motion to dismiss to a Civ.R. 56 motion for summary judgment. While the City's failure-to-exhaust arguments turn in large part on the interpretation of the Ohio Revised Code, the City's ordinances, and the Central Collection Agency's Rules and Regulations, the Gareau affidavit — the only element that triggers possible conversion to a Civ.R. 56 motion — goes to the heart of the City's failure-to-exhaust defense. This is especially true in light of the Taxpayers' allegation that they "have made timely requests to the City to pay the required interest on their refund, but the City has refused to do so." (Complaint at ¶ 63.)

{¶ 23} The City's core argument, expressed in its affidavit, can be boiled down to "just ask for the interest; if we turn you down, we will send you a notice and tell you how to appeal." Paragraph 63 of the complaint, however, in essence says, "[W]e already asked for it and you refused." In light of this, the City's argument below that the Taxpayers "never allege that they . . . request[ed] that the City pay interest on their refunds," and that it is therefore "unclear" to what extent the tax administrator considered such requests, is perplexing. As discussed above, in reviewing the grant of a motion to dismiss premised on Civ.R. 12(B)(6), we are required to accept the allegations of the complaint as true. In doing so, and in

drawing all reasonable inferences in the Taxpayers' favor, the complaint alleges that the Taxpayers complied, at least to some extent, with the request process envisioned by the City in both its briefing and in Gareau's affidavit.

{¶ 24} No record was made in the trial court as to the form of any such request for interest, as contemplated by the City or as received. Gareau's affidavit does not address the proper form of a request. His affidavit does not address whether or in what manner the City responded, if at all, to the requests that the Taxpayers specifically allege they made, including whether the City advised the Taxpayers of a right to appeal to the local board of tax appeals. According to the Gareau affidavit, such a request would trigger a denial letter and a notice of appeal rights. And according to the City's own arguments in its appellate brief, it would need to issue *something* to the Taxpayers to trigger their obligation to seek administrative relief through the local board of tax appeals. Gareau's affidavit and the City's corresponding arguments raise more questions than they answer.

{¶ 25} In *Schneider*, we held that "failure to exhaust administrative remedies is an affirmative defense to an action." *Schneider*, 2013-Ohio-1900, at ¶ 5 (8th Dist.).[4] We further wrote that "[b]ecause affirmative defenses typically require reference to materials outside the complaint, they are not amenable to disposition by means of a Civ.R. 12(B)(6) motion to dismiss and better suited to disposition by

---

[4] "The doctrine of failure to exhaust administrative remedies is not a jurisdictional defect to a declaratory judgment action; it is an affirmative defense that may be waived if not timely asserted and maintained." *Parkstone Capital Partners v. Solon*, 2013-Ohio-3149, ¶ 20 (8th Dist.).

summary judgment." *Id.*, citing *State ex rel. Freeman v. Morris*, 62 Ohio St.3d 107, 109 (1991). In that case, "[t]he complaint made no allegations of any kind from which the court could find that the employees failed to exhaust their administrative remedies. The only facts going to administrative remedies were offered in the county's motion to dismiss," to which the county attached multiple exhibits that evidenced "facts that were beyond the four corners of the complaint." *Id.* at ¶ 6.

{¶ 26} The *Schneider* Court found that the complaint had set forth a viable claim of relief and that "[t]o resolve the issue of exhaustion of administrative remedies, the court had to go beyond the four corners of the complaint." *Id.* at ¶ 13. Reversing the trial court, the *Schneider* tribunal found that "[a]ny attempt to resolve the issue of exhaustion of administrative remedies solely on the basis of the complaint was premature." *Id.* at ¶ 12.

{¶ 27} Here, as in *Schneider*, we find that the complaint set forth a viable claim of relief and that the trial court could not have resolved the exhaustion-of-remedies issue without going beyond the four corners of the complaint. The Gareau affidavit supplements the City's arguments under the Ohio Revised Code, the City's ordinances, and the Central Collection Agency's Rules and Regulations. Gareau makes specific factual declarations regarding the administrative steps that the Taxpayers were allegedly required to pursue before turning to the court for relief. In light of the specific allegations in the complaint, however, and drawing all reasonable inferences in the Taxpayers' favor, the trial court could not have granted

the City's motion to dismiss without considering matters outside the four corners of the complaint.

{¶ 28} The trial court erred in granting the City's motion to dismiss because the complaint is silent on whether any administrative appeal was taken and whether any exception to the exhaustion doctrine applies. The only allegation in the complaint possibly related to administrative review is confined to where the Taxpayers allege they have already "made timely requests to the City to pay the required interest on their refund" and were denied this interest. This allegation does not address whether administrative remedies were pursued after that denial. Paragraph 63 simply notes that a request was made and denied. Although the journal entry dismissing the complaint recognized the two exceptions to the exhaustion requirement, in granting the City's motion to dismiss the trial court did not apply that law to the allegations in the complaint.

{¶ 29} As discussed above, a trial court has two options when confronted with a motion to dismiss presents evidence outside of the complaint. It may exclude the evidence or it may convert the motion to dismiss into a motion for summary judgment. *See* Civ.R. 12(B); *Rankin*, 2016-Ohio-7490, at ¶ 8 (8th Dist.). Here, the trial court determined there was a duty to exhaust administrative remedies, but it did not state that it relied on any facts alleged in the complaint or facts averred in the City's affidavit. With respect to the latter, it neither excluded the City's affidavit nor converted the Civ.R. 12(B)(6) motion to dismiss into a motion for summary judgment.

{¶ 30} We have already noted that the City's affidavit raises more questions than it answers. In the affidavit, Gareau stated under oath that "[h]ad Plaintiffs requested interest from the tax administrator, they would have been issued either an assessment or a letter denying their request and informing them how to request an assessment for purposes of appealing that denial to the local board of tax review." At oral argument, the City claimed this assertion was designed to track the language of R.C. 718.11(B). That explanation, however, functions as a concession, because it reveals that Gareau's affidavit is essentially stated in the hypothetical. It tracks the law the City seeks to apply, but does not identify what administrative steps the Taxpayers took or failed to take. The affidavit, like the complaint, does not address whether the Taxpayers filed any appeal with a local board of tax review. It does not support dismissal.

{¶ 31} We hold that it was not necessary to consider materials outside the complaint to determine the City's motion to dismiss. We further hold that even if the trial court considered the Gareau affidavit, it did not support dismissal. The trial court's judgment dismissing the complaint is reversed, and the case is remanded for further proceedings consistent with this opinion.

{¶ 32} For purposes of the trial court's consideration on remand, we emphasize the limited scope of our holding: We offer no opinion as to whether an exhaustion-of-remedies argument would succeed or fail on a more developed record. As in *Schneider*, we merely hold that resolving this issue based solely upon the complaint was premature. *Schneider*, 2013-Ohio-1900, at ¶ 12 (8th Dist.).

{¶ 33} In addition, while the parties' appellate briefs discuss issues such as the propriety of class certification and the constitutionality of vacation pay withholding, the trial court has not decided those issues. They are not ripe for consideration. "[A]n appellate court limits its review to issues actually decided by the trial court in its judgment." *Lycan v. Cleveland*, 2016-Ohio-422, ¶ 21. *See also Tecco v. Iconic Labs, LLC*, 2022-Ohio-2041, ¶ 13 (8th Dist.); *Fast Tract Title Servs. v. Barry*, 2024-Ohio-5216, ¶ 42 (8th Dist.) ("'[A]ppellate courts . . . do not address issues that the trial court declined to consider. . . . In such a situation, the appellate court should reserve judgment until such time as the undecided issues are considered by the trial court and that decision is appealed.'"), quoting *Crestmont Cleveland Partnership v. Ohio Dept. of Health*, 139 Ohio App.3d 928, 935 (10th Dist. 2000).

{¶ 34} Judgment reversed and remanded for further proceedings consistent with this opinion.

It is ordered that appellants recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

LISA B. FORBES, P.J., and
MARY J. BOYLE, J., CONCUR